# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NEONATAL PRODUCT GROUP, INC., | ) |
| | ) |
| Plaintiff and Counterclaim Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| JANICE M. SHIELDS and PAUL W. SHIELDS, | ) |
| *Individually and as trustees of the SHIELDS FAMILY TRUST dated August 19, 2010*, and ANGELE INNOVATIONS, LLC, | ) |
| | ) |
| Defendants, Counterclaimants, and Third-Party Plaintiffs, | ) |
| | ) Case No. 13-2601-DDC |
| v. | ) |
| | ) |
| CRECHE INNOVATIONS, LLC, MILLENIUM MARKETING GROUP, LTD., and SCOTT A. NORMAN, | ) |
| | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the court upon Counterclaimants Janice M. Shields and Paul W. Shields, individually and as trustees of the Shields Family Trust, and Angele Innovations' Motion to Compel (ECF No. 64). Neonatal Product Group, Inc., Creche Innovations, LLC, Millennium Marketing Group, Ltd., and Scott A. Norman (collectively "counterclaim defendants") have filed a response opposing the motion.[1] For the reasons stated below, the motion is granted in part and denied in part.

---

[1] For clarity, the court refers to these parties as counterclaim defendants. The court notes, however, that Creche Innovations, LLC, Millennium Marketing Group, Ltd., and Scott A. Norman have not asserted affirmative claims against any party, and therefore, the claims asserted against them are not "counterclaims." *See* Am. Compl., ECF No. 49. Although the parties have captioned this case to reflect that these parties are counterclaim defendants, they are more appropriately characterized as defendants to the third-party claims asserted by the Shields and Angele Innovations, LLC. However, because all parties refer to these entities as "counterdefendants" or "counterclaim defendants," the court will do so as well to avoid confusion.

## I. Background

On November 25, 2013, Plaintiff Neonatal Product Group filed this action seeking declaratory judgment that certain products it makes and sells to care for newborns in hospital neonatal units do not infringe on U.S. Patent No. 6,417,498 (the "498 patent" or the "patent-in-suit") and that the patent is invalid because it does not meet the conditions of patentability. Defendants Janice M. Shields and Paul W. Shields are the inventors of the patent-in-suit. They subsequently transferred their ownership of the patent-in-suit to Defendant Angele Innovations. Prior to the transfer, the Shields entered into a marketing agreement with Counterclaim Defendant Millennium Marketing Group (MMG), whereby MMG agreed to provide various marketing services relating to the patent-in-suit in exchange for a share of royalties on any license agreements. Counterclaim Defendant Scott Norman, MMG's president, signed the agreement on behalf of MMG. Mr. Norman, Mark Petheram, and Stephanie Norman subsequently formed Neonatal Product Group, which then entered into a license agreement with MMG and the Shields. Under the license agreement, Mr. and Ms. Shields granted Neonatal an exclusive license under the patent-in-suit in exchange for, among other things, royalty payments on revenues generated from the patent.

As a result of the agreement, Neonatal marketed and sold PENGUIN® milk-warming machines, used for infants in neonatal intensive-care units, and THERMAL-LINER® bags, used in the machines to isolate milk bottles from warming fluid. During the parties' business relationship, Mr. Norman, Mr. Petheram, Drake L. Koch, and the Shields filed U.S. Patent Application No. 11/801,142 (the '142 application). According to counterclaim defendants, the '142 application required improvements to the bags used with the PENGUIN® milk-warming machines, but the application was rejected under 35 U.S.C. § 103(a) as being unpatentable.

These same inventors subsequently filed U.S. Patent Application 11/849,041 (the '041 application). According to counterclaim defendants, the '041 application also required various improvements to the bags used with the PENGUIN® milk-warming machines and was also rejected as being unpatentable. Counterclaims defendants state that neither of these improvements were ever commercialized.

According to counterclaim defendants, from the time of entering into the license agreement until 2013, Neonatal paid royalties to the Shields. In 2013, counterclaim defendants state they discovered Neonatal's PENGUIN® milk-warming machines and THERMAL-LINER® bags were not covered by the patent-in-suit, and therefore, Neonatal stopped making royalty payments under the license agreement. The Shields, believing they were still entitled to royalty payments, provided notice of termination of the license agreement. They also terminated the marketing agreement with MMG.

The Shields and Angele Innovations assert various affirmative claims for relief against Neonatal (doing business as Creche Innovations, LLC, also named as a defendant to these claims), MMG, and Mr. Norman individually. The claims include patent infringement, inducing patent infringement, breach of a license agreement, breach of the patent marketing agreement, tortious interference with a contract, breach of fiduciary duty, and intentionally causing or assisting an agent to violate a duty of loyalty, and unjust enrichment. On February 17, 2015, counterclaimants served counterclaim defendants with their first requests for production of documents. The parties mutually agreed to extend the deadlines for each side to respond to the other's respective document production requests, and counterclaim defendants continued to supplement their original responses with additional documents. But according to counterclaimants, the production was minimal and deficient.

While the parties were in the process of conferring regarding counterclaim defendants' production and objections to the discovery requests, counterclaim defendants informed them that some potentially responsive electronically stored information (ESI) was no longer retrievable. Although the ESI issues do not directly bear on the court's ruling on the particular discovery issues raised in the motion to compel, the court will include a brief overview of counterclaim defendants' explanation regarding ESI loss because the parties devote a considerable portion of their briefs to the topic.

Counterclaim defendants explain that Neonatal's intra-office and external e-mail functionality was previously housed on a post-office protocol (POP) server maintained and overseen by an outside IT vendor. According to counterclaim defendants, employees' individual e-mails were housed on the POP server only until the e-mails were retrieved by the user. Once the user retrieved an e-mail from the POP server, the e-mail was transferred to the client's computer, and no copy of the e-mail remained on the POP server. Counterclaim defendants state that in September 2013, Mr. Petheram's work-issued laptop computer crashed, causing the loss of all information stored on the hard drive. They made no attempt to recover any data from the hard drive, and Neonatal discarded the laptop shortly thereafter. According to counterclaim defendants, there was no external backup of the laptop's hard drive. Because of the nature of the POP server, e-mails downloaded to Mr. Petheram's laptop were lost, and the only existing backup copies were of individual documents Mr. Petheram saved to Neonatal's internal server or those that he printed and kept in a paper file.

Counterclaim defendants also state that Mr. Norman suffered a stroke in October 2013, which resulted in the loss of function on one side of his body. As a result, he stopped using his computer and communicated with others in person or by smartphone. Counterclaim defendants

4

state that Mr. Norman had access to the same e-mails on his phone to which he had previously had access on his computer. Other documents stored on Mr. Norman's computer were backed up on Neonatal's internal server before Neonatal wiped the hard drive of Mr. Norman's computer and discarded it.

In June 2014, while this action was pending, Neonatal's IT vendor informed Neonatal that it would need to migrate e-mail service from the POP server to a cloud-based Exchange server. Counterclaim defendants state the POP server had begun to experience an increasing number of stability issues and service interruptions, which had led Neonatal's outside IT vendor to decommission the POP server and begin the migration, which occurred in June 2014. It was also during this time that Mr. Petheram learned that e-mails saved to Mr. Norman's phone had been automatically deleted above a certain capacity. At the time Neonatal disposed of Mr. Norman's computer, Mr. Petheram incorrectly believed that all e-mails were mirrored to Mr. Norman's phone.

On July 8, 2015, while the parties were still in the process of conferring about this discovery dispute, counterclaim defendants provided counterclaimants with a written explanation of Neonatal's computer hardware failures. The statement included correcting counsel's previously inaccurate understanding about some of the events that took place leading to the loss of ESI. Despite the parties' efforts and counterclaim defendants' explanation, counterclaimants still maintain that counterclaim defendants' production is deficient; the court should overrule their objections to requests for production of documents; and their recent revelations concerning the loss of ESI are an appropriate ground for the court to require additional information and discovery from counterclaim defendants regarding the loss of ESI. Counterclaim defendants maintain that they have produced all documents responsive to certain requests, that the court

should sustain their objections, and that any loss of ESI was unintentional and likely did not encompass responsive information. The court addresses these topics below.

## II. Discussion

Counterclaimants seek an order requiring counterclaim defendants to (1) immediately produce all non-privileged responsive documents; (2) certify in writing they have produced all responsive documents; (3) provide counterclaimants with a detailed written explanation of every measure counterclaim defendants have taken to preserve relevant documents, including ESI; (4) provide counterclaimants with any computer hard drives and/or electronic devices within counterclaim defendants' possession, custody, or control that are no longer in use but may have been used to store requested documents; and (5) an award of fees and expenses incurred as a result of filing the present motion.

### A. Requests for Production

Counterclaimants point the court to multiple requests for production of documents to which they believe counterclaim defendants have not fully responded or have lodged improper objections. Counterclaim defendants contend much of the motion is moot as to these requests because they have produced all responsive documents within their possession, custody, or control. Nevertheless, counterclaim defendants continue to rely on objections that certain requests are overly broad or seek irrelevant information.

#### 1. Request Nos. 5-7

These requests seek documents and things concerning counterclaimants.[2] Counterclaim defendants state they have made a reasonable search and have produced any and all responsive documents located in that search. They believe that e-mails potentially responsive to these

---

[2] Objections and Resps. to Countercls.' First Set of Reqs. for Produc. at 5, ECF No. 65-3.

requests may be encompassed within the ESI they failed to preserve. They argue that the court should deny the motion to compel as to the lost ESI because counterclaimants have not shown prejudice. They speculate that their communications with counterclaimants would also be in counterclaimants' possession. The plain language of the requests seeks documents broader than just correspondence between counterclaimants and counterclaim defendants. Moreover, a showing of prejudice is something the court considers when determining whether spoliation sanctions are appropriate.[3] Counterclaimants have not sought spoliation sanctions here, and there is no requirement that they show prejudice on a motion to compel.

      Notably, counterclaim defendants do not rely upon any objections in response to the motion to compel. Objections initially raised but not asserted in the objecting party's response to a motion to compel are deemed abandoned.[4] Moreover, counterclaim defendants have essentially admitted that it is likely that because of the ESI loss, they have failed to produce certain responsive documents to counterclaimants. Given that counterclaim defendants' production is likely incomplete and that they have failed to come forward with a valid objection to discovery, the court grants the motion to compel as to Request Nos. 5-7. While counterclaim defendants cannot produce ESI that no longer exists, the court expects them to conduct an additional thorough search, which shall include exploring whether there are any possible avenues to retrieve the lost ESI or whether ESI may be saved in any other location where it is retrievable. Within fourteen (14) calendar days from the date of this order, counterclaim defendants shall fully

---

[3] *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

[4] *See Moses v. Halstead*, 236 F.R.D. 667, 675-79 (D. Kan. 2006) (finding work-product and attorney-client privilege objections to be abandoned because garnishee did not reassert these objections in response to a motion to compel); *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 681 (D. Kan. 2004) (deeming privileges and confidentiality objections abandoned where not reasserted in opposition to a motion to compel); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004) ("[W]hen an objection or privilege is initially raised but not relied upon in response to the motion to compel, the court will deem the objection or privilege abandoned.").

respond, without objection, to Request Nos. 5-7. If counterclaim defendants are unable to retrieve any additional responsive documents, they shall file a notice with the court, within fourteen (14) calendar days of this order, that states what additional steps they have taken to attempt to retrieve documents responsive to these requests.

### 2. Overbreadth objections to Request Nos. 15, 16, 24, 25, 30, 31, 35-40, and 56,[5]

In response to the motion to compel, counterclaim defendants note that the above-listed requests for production use omnibus phrases like "all communications . . . relating to . . . ."[6] Judges in this district have held that a discovery request may be facially overly broad if the omnibus phrase "is used with respect to a general category or broad range of documents."[7] As a guideline for evaluating the use of omnibus phrases in discovery requests, judges in this district often refer to Magistrate Judge Gerald L. Rushfelt's statements in *Audiotext Communications v. U.S. Telecom, Inc.*:[8]

> Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require the respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either

---

[5] Counterclaimants initially moved to compel responses to Request No. 34. In their reply brief, they state that counterclaim defendants appear to have complied with this request. *See* Reply to Countercl. Defs.' Resp. to Countercls.' Mot. to Compel at 8, ECF No. 72. Therefore, the motion is moot as to this request. Counterclaim defendants also list Request No. 37 as one to which they lodge an overbreadth objection. They did not, however, assert an overbreadth objection in response to the discovery requests. *See* Objections and Resps. to Countercls.' First Set of Reqs. for Produc. at 17, ECF No. 65-3. Therefore, this objection is waived. *See Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005). Counterclaim defendants separately lodge a relevance objection to Request No. 37, which the court addresses below.

[6] Objections and Resps. to Countercls.' First Set of Reqs. for Produc. at 7, ECF No. 65-3.

[7] *See Johnson v. Kraft Foods of N. Am., Inc.*, 238 F.R.D. 648, 658 (D. Kan. 2006) (listing cases in this district reaching the same conclusion about omnibus terms in discovery requests).

[8] No. 94-2395-GTV, 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995).

> obvious or hidden, within the scope of the request. The court does not find that reasonable discovery contemplates that kind of wasteful effort.[9]

Counterclaim defendants fail to specifically address each of the requests for production, instead arguing that they are overly broad on their face because of their use of omnibus phrases, and therefore, the court should sustain their blanket objections. But the omnibus phrase renders the discovery request facially objectionable only when it is used with respect to a broad category of documents. Here, however, the omnibus phrases pertain to sufficiently specific categories of information. For example, Request No. 15 seeks communications and documents between counterclaim defendants "and any actual or potential licensee or purchaser of the '498 Patent," and Request No. 16 seeks communications and documents between counterclaim defendants and "any third party relating to the validity or invalidity of the '498 Patent."[10] These requests and the remainder of those identified in the subtitle listed above are not facially objectionable just because they use omnibus phrases. Instead, the categories of information are set out with enough particularity to enable counterclaim defendants to reasonably identify the categories of information sought. Because the court does not find the requests to be facially overly broad and because counterclaim defendants have not otherwise supported an overbredth objection, the court overrules these objections and grants the motion to compel as to these requests, with the exception of Request No. 37 and 56, as noted below.

Counterclaim defendants had previously produced some documents responsive to the portions of the requests that counterclaim defendants did not find objectionable. While it is not entirely clear that additional responsive documents exist as to each request for production, it

---

[9] *Id.* at *1.

[10] Objections and Resps. to Countercls.' First Set of Reqs. for Produc. at 7-8, ECF No. 65-3.

appears that at least some documents have likely been withheld on the basis of the overbreadth objections the court has now overruled. Moreover, if there are additional potentially responsive documents encompassed within the lost ESI, the court expects counterclaimants to include this information in the search ordered with regard to Request Nos. 5-7, discussed above.

Accordingly, within fourteen (14) calendar days from the date of this order, counterclaim defendants shall fully respond, without objection, to Request Nos. 15, 16, 24, 25, 30, 31, 36, and 38-40. As discussed in further detail below, the court sustains counterclaim defendants' relevance objection to Request No. 37 and sustains counterclaim defendants' overbreadth objection based on the scope of the request to Request No. 56. Counterclaim defendants need not respond further to these requests.

### 3.  Request Nos. 24 and 25

These requests seek documents concerning the conception, research, testing, design, development, and reduction to practice of any alleged inventions disclosed and/or claimed in two previous patent applications by Neonatal in 2007.[11] Despite initially asserting objections to these discovery requests, counterclaim defendants produced some documents responsive to these requests. Counterclaim defendants do not explicitly rely on a relevance objection in response to the motion to compel. Rather, they state, "It is important to understand that these patent applications disclosed and claimed inventions directed to improved bags for holding bottles in the PENGUIN® warmers[] and that the inventions were determined to be commercially unfeasible and never pursued to commercialization."[12] They go on to explain this was why they "objected to these requests on relevance, privilege, and overbreadth grounds and initially stood

---

[11] *Id.* at 11-12

[12] Resp. to Defs.' Mot. to Compel at 39-40, ECF No. 69.

on [these] objections."[13] To the extent counterclaim defendants are still attempting to assert a relevance objection—or any other objection—in response to the motion to compel, the objection is overruled.

Relevance is broadly construed at the discovery stage and a "request for discovery should be considered relevant if there is 'any possibility' the information sought may be relevant to the claim or defense of any party."[14] Counterclaimants explain that the information sought by these requests for production is relevant to the patent infringement claims because this information could establish what representations were made by counterclaim defendants with respect to potentially infringing products. Counterclaimants allege Neonatal sells a version of the bottle warming bag that infringes on the patent-in-suit and that information about the development of previous designs could shed light on how Neonatal arrived at the current warming bag design. This explanation is sufficient to establish the relevance of the requested discovery. When a discovery request seeks facially relevant information or when the proponent of the discovery has demonstrated relevance, the objecting party bears the burden to show how the discovery request is objectionable.[15] Counterclaim defendants have not done this. Their passing reference that the patent applications mentioned involved different inventions other than the allegedly infringing products at issue here is insufficient to support a relevance objection or any other objection to these discovery requests. Any objections are overruled.

---

[13] *Id.* at 40.

[14] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999); *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999)).

[15] *Allen v. Mill–Tel, Inc.*, 283 F.R.D. 631, 633–34 (D. Kan. 2012) ("[T]he objecting party must specifically show in its response to the motion how each discovery request is objectionable.") (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004)).

That said, counterclaim defendants state they have produced all responsive documents in their possession, custody, and control. As explained in greater detail below, the court cannot compel a party to produce documents that do not exist. However, if counterclaim defendants have withheld any responsive documents on the basis of their now-overruled objections, they shall produce them within fourteen (14) calendar days from the date of this order.

### 4.  Request Nos. 28-29

These requests seek documents "sufficient to identify the persons responsible for the design and development of any product or process that uses any of the alleged inventions disclosed or claimed in" two previous patent applications.[16] Counterclaim defendants contend they have fully responded by producing documents sufficient to identify these individuals. Counterclaimants contend the responses are deficient because counterclaim defendants' response consisted of the inventors listed on the cover pages of the patent applications, but they note that the inventors are not the only individuals who meet the criteria in the request.

"Generally, when a party responding to discovery requests states that it has fully responded, the court will not compel further responses unless the moving party has presented information that calls into question the veracity of the responding party's representation."[17] Here, counterclaimants state that inventors are not the only group of individuals encompassed by the

---

[16] Objections and Resps. to Countercls.' First Set of Reqs. for Produc. at 13, ECF No. 65-3.

[17] *FDIC v. McCaffree*, 289 F.R.D. 331, 338 (D. Kan. 2012) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. at 639 (denying a motion to compel as to discovery requests to which the defendant stated it had fully responded)); *see also ConAgra Foods Food Ingred. Co., Inc. v. Archer Daniels Midland Co.*, No. 12-2171-EFM, 2014 WL 1570263, at *6 (D. Kan. Apr. 18, 2014) (denying a motion to compel as to document requests where the responding party had stated it had fully responded and the discovering party had failed to come forward with any evidence suggesting that the responses were incomplete); *Stouder v. M&A Tech. Inc.*, No. 09-4113-JAR, 2011 WL 768738, at *4 (D. Kan. Feb. 28, 2011) (stating that plaintiff had not come forward with any evidence from which the court could conclude defendants had withheld responsive documents); *Heartland Surgical Specialty Hosp. v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *23 (D. Kan. Mar. 26, 2007) (denying a motion to compel as to document requests to which the responding parties stated they had fully responded).

requests, but counterclaimants fail to provide the court with any information suggesting that there are additional individuals whom counterclaimant defendants should have identified through producing additional responsive documents. Because there is no information before the court suggesting that counterclaim defendants' responses were incomplete, the court denies counterclaimants' motion to compel as to Request Nos. 28 and 29.

### 5. Request Nos. 30-31

These requests seek documents concerning the contribution of any person to the conception, research, testing, design, and reduction to practice or any other development of the alleged inventions disclosed or claimed in the two previous patent applications.[18] In addition to asserting overbreadth objections to these requests (overruled above), counterclaim defendants also devote a portion of their brief to detailing what documents they have produced in response to these requests. In short, they note that these requests seek documents about inventions that were never commercialized and that they have complied with their discovery obligations by producing all responsive non-privileged documents that reference the applications and the named inventors. Given the history of the applications and that the alleged inventions were never commercialized, it is conceivable that additional responsive documents do not exist. However, the plain language of the requests seek more information than what counterclaim defendants have produced in response. While counterclaim defendants cannot produce nonexistent documents, they are required to conduct a reasonable search for documents responsive to the discovery requests as drafted, not as counterclaim defendants believe they should have been

---

[18] Objections and Resps. to Countercls.' First Set of Reqs. for Produc. at 13-14, ECF No. 65-3.

drafted.[19] Because it appears that did not happen, the court grants the motion to compel as to Request Nos. 30-31. Counterclaim defendants shall conduct a reasonable search for any additional responsive documents and if they exist, produce them within fourteen (14) calendar days from the date of this order.

### 6. Request Nos. 35, 36, 39, and 40

Request Nos. 35 and 36 seek "laboratory notebooks, technical files, diaries, appointment calendars, and road trip reports" of the inventors of the previous two patent applications.[20] Request Nos. 39 and 40 seek documents and things concerning several subcategories of topics related to the previous two patent applications.[21] In addition to asserting overbreadth objections (overruled above), counterclaim defendants also mention they initially lodged a relevance objection. It does not appear that they continue to rely on this objection in response to the motion to compel because they fail to set forth any argument supporting their objection. Rather, they submit that they have fully responded to the request. Counterclaim defendants explain that it is entirely reasonable that they would not have retained the type of documents the requests seek because they had abandoned these patent applications long before any duty may have arisen to preserve documents relating to this lawsuit. As previously set forth, the court generally does not grant motions to compel when a party responding to a discovery request states that it has fully responded and the court has no reason to doubt the veracity of that assertion. Despite counterclaim defendants' assertions that they had fully responded to the discovery requests, they

---

[19] *McCaffree*, 289 F.R.D. at 338 (citing *Hock Foods v. William Blair & Co.,* No. 09-2588-KHV, 2011 WL 884446, at *8 (D. Kan. Mar. 11, 2011) ("The Federal Rules require a party to conduct a reasonable search for responsive information.")).

[20] Objections and Resps. to Countercls.' First Set of Reqs. for Produc. at 16, ECF No. 65-3.

[21] *Id.* at 18-19.

14

continued to rely on overbreadth objections, as previously discussed. If counterclaim defendants have withheld any responsive documents on the basis of these objections, they must produce them within fourteen (14) calendar days from the date of this order.

### 7. Request No. 37

This request seeks documents relating to counterclaim defendants' "inventorship assignment policies, including . . . any inventorship assignment agreements or cost-sharing or profit-sharing agreements with inventors."[22] Counterclaim defendants assert overbreadth and relevance objections to these requests. As explained in footnote 5, counterclaim defendants' overbreadth objection is waived because they failed to initially assert it in response to the requests for production. For the reasons stated below, their relevance objection is sustained.

There is no presumption in the Federal Rules of Civil Procedure that a discovery request seeks relevant information.[23] Relevance, however, is often apparent on the face of the request.[24] When relevance is not apparent, the proponent of the discovery request must, at the outset, show the relevance of the requested information.[25] The relevance of counterclaim defendants' inventorship assignment policies is not apparent on the face of the request. Therefore, counterclaimants bear the initial burden of demonstrating the relevance of the requested information.

---

[22] *Id.* at 17.

[23] *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 3880027, at *7 (D. Kan. Sept. 28, 2010) (citing *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007)).

[24] *Id*. (citing *Thompson*, 2007 WL 608343, at *8 n.20).

[25] *Id.* at *7 (citing *Thompson*, 2007 WL 608343, at *8 n.20).

Counterclaimants state that, "Patent ownership is specifically relevant to every claim and counterclaim involving infringement of the '498 patent . . ."[26] They go on to state that counterclaim defendants have not met their burden to show the requests seek information not relevant. In their reply brief, counterclaimants restate the latter argument—that counterclaim defendants have not supported their relevance objection. Merely stating that discovery is relevant to certain claims without explaining how it is relevant to those claims does nothing to inform the court about the purpose for which the discovering party seeks the information. Counterclaimants' conclusory assertion that the discovery is relevant to the patent infringement claims is not sufficient to demonstrate the relevance of the requested discovery. The court sustains counterclaim defendants' relevance objection and denies the motion to compel as to Request No. 37.

### 8. Request No. 38

Like Request Nos. 35, 36, 39, and 40, discussed above, counterclaim defendants contend they have fully complied with Request No. 38 and that no responsive documents are in their possession, custody or control. However, counterclaim defendants have also asserted an overbreadth objection, which the court has overruled. Although the court generally will not grant a motion to compel when the responding party states that it has fully responded, here, the court is unclear whether counterclaim defendants have withheld any responsive documents on the basis of their overbreadth objection. If they have, they must produce them within fourteen (14) calendar days from the date of this order.

### 9. Request No. 56

---

[26] Mem. in Supp. of Mot. to Compel at 19, ECF No. 65.

Although counterclaim defendants grouped this request into their overbreadth objections based omnibus phrases, they separately address this request's scope. Request No. 56 seeks, "All financial documents, including but not limited to, budget forecasts that concern the Accused Products."[27] Counterclaim defendants state they have provided counterclaimants with sales data during the relevant time period from their electronic records for the PENGUIN® warmer and THERMA-LINER® bags. They state that they do not create budget forecast for the accused products. Neither the request itself nor the instructions section preceding the requests for production provide a temporal scope. This district has previously held that a discovery request lacking any temporal limitation is facially overly broad.[28] Counterclaimants make no attempt to explain why they require this discovery, and in the absence of this information, the court is not in a position to modify the request. For this reason, the court finds counterclaim defendants' limited production is sufficient and sustains their overbreadth objection. The motion to compel is denied as to this request.

### 10. Request No. 57

This request for production seeks documents reflecting counterclaim defendants' business plan or business model. Counterclaim defendants state that Neonatal is a small company, as was MMG, and that no responsive documents exist. In their reply brief, counterclaimants speculate that it is highly unlikely that a corporation lacks a written business plan or model. But again, the court lacks any information or evidence suggesting that these

---

[27] Objections and Resps. to Countercls.' First Set of Reqs. for Produc. at 25, ECF No. 65-3.

[28] *See, e.g.*, *Conagra Foods*, 2014 WL 1570263, at *4 (finding a discovery request with no temporal scope overly broad); *Hock Foods, Inc. v. William Blair & Co.*, No. 09-2588-KHV, 2011 WL 884446, at *7 n.61 (D. Kan. Mar. 11, 2011) (finding that a discovery request with no temporal scope was facially overly broad); *Stouder*, 2011 WL 673763, at *4 (same); *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 672 (D. Kan. Aug. 15, 2003) (finding that an interrogatory with no temporal limitation was overly broad and limiting the time period).

documents do indeed exist and that counterclaim defendants have improperly withheld them. As previously explained, unless the discovering party has evidence or information calling into question the responding party's representation, the court generally will not grant a motion to compel. For this reason, the court denies the motion to compel as to Request No. 57.

### B. Requests for Additional Information as a Result of ESI Loss & Request for Fees and Expenses

Counterclaimants also request that the court order: (1) counterclaim defendants to certify in writing that all responsive documents have been produced; (2) provide a detailed explanation regarding every measure they have taken to preserve evidence; and (3) produce any computer hard drives and/or electronic devices within their possession, custody, or control, which are no longer in use but may have been used to store any of the documents responsive to the previously discussed discovery requests. Counterclaimants also seek fees and expenses incurred as a result of filing this motion to compel.

Under Fed. R. Civ. P. 26(g), counterclaim defendants' counsel's signature on discovery responses already serves as a certification that the responses are "complete and correct" and that any objections are made "consistent with the rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law."[29] The signature also serves as a certification that the responses and objections are not "interposed for any improper purpose[.]"[30] If the certification violates Rule 26(g), "without substantial justification," then sanctions are available.[31] Likewise, counterclaim defendants'

---

[29] Fed. R. Civ. P. 26(g)(1)(B).

[30] *Id.*

[31] Fed. R. Civ. P. 26(g)(3); *see also Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 647-48 (D. Kan. 1999) (considering whether sanctions were warranted under Rule 26(g) for, among other things, potentially making

18

signature on the response brief also constitutes a certification under Fed. R. Civ. P. 11(b). The court has no reason to believe the representations made in the response brief are inaccurate. The Federal Rules of Civil Procedure sufficiently address this issue, and a court order requiring a further certification is unnecessary.

The court also will not order counterclaim defendants to provide a detailed explanation regarding every measure they have taken to preserve evidence or require them to produce computer hard drives and electronic devices. Generally, the court will not compel responding parties to produce more than what they were required to produce in the first instance."[32] Serving discovery requests aimed at these issues is the appropriate vehicle by which counterclaimants may attempt to obtain this information. Formal discovery requests afford responding parties certain safeguards. For example, the responding party may lodge objections and may rely upon Fed. R. Civ. P. 37's requirement that the discovering party confer prior to filing a motion to compel.[33] But absent a motion to compel compliance with a formal discovery request, the court generally will not compel a party to produce the type of information that counterclaimants seek.

The court also denies counterclaimants request for attorney fees and expenses. Generally, the undersigned does not award fees and expenses when a motion to compel is granted in part and denied in part, as is the case here. [34]

### C. Conclusion

---

incorrect representations about whether they were in the possession, custody, or control of additional documents responsive to discovery requests).

[32] *Stouder*, 2011WL 673763, at *3.

[33] *See DeWitt v. Sw. Bell Tel. Co.*, No. 12-2605-SAC, 2014 WL 695744, at *8 (D. Kan. Feb. 24, 2014) (discussing analogous reasons why judges in this district often refrain from compelling a party to respond to informal discovery requests).

[34] *See* Fed. R. Civ. P. 37(a)(5)(C) (providing discretion whether to apportion the reasonable fees and expenses when the court grants in part and denies in part a motion to compel).

For the reasons explained above, counterclaimants' motion to compel is granted as to Request Nos. 5-7, 15, 16, 24, 25, 30, 31, 35, 36, and 38-40. Within fourteen (14) calendar days from the date of this order, counterclaim defendants shall fully respond, without objection, to these discovery requests. As discussed in the section addressing Request Nos. 5-7, counterclaim defendants shall conduct an additional thorough search for responsive documents, which shall include exploring whether there are any possible avenues to retrieve the lost ESI or whether ESI may be saved in any other location where it is retrievable. If counterclaim defendants are unable to retrieve any additional responsive documents, they shall file a notice with the court, within fourteen (14) calendar days of this order, that states what additional steps they have taken to attempt to retrieve documents responsive to these requests. The court denies the motion to compel in all other respects.

Accordingly,

**IT IS THEREFORE ORDERED** that Counterclaimants Janice M. Shields, Paul W. Shields, and Angele Innovations' Motion to Compel (ECF No. 64) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 20th day of October, 2015, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge
