## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NEONATAL PRODUCT GROUP, INC., | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Case No. 13-2601-DDC-KGS |
| JANICE M. SHIELDS, PAUL W. SHIELDS, and ANGELE INNOVATIONS, LLC, | |
| Defendants/Counterclaimants, | |
| v. | |
| CRECHE INNOVATIONS, LLC, MILLENNIUM MARKETING GROUP, LTD., and SCOTT A. NORMAN, | |
| Counterclaim Defendants. | |

## MEMORANDUM AND ORDER

This is a patent infringement case.  Plaintiff Neonatal Product Group, Inc., doing business as Creche Innovations, LLC ("Creche"), makes and sells products used to care for newborn infants in hospital neonatal units.  Defendants Janice M. Shields and Paul W. Shields invented and procured U.S. Patent No. 6,417,498 ("the '498 Patent") for a device called the "Neonatal Substrate Warmer."  Defendant Angele Innovations, LLC currently owns the '498 Patent.   The device disclosed in the '498 Patent automatically warms and vibrates baby bottles containing frozen or refrigerated breast milk so that the breast milk thaws, warms, and mixes quickly and efficiently.

1

Plaintiff Neonatal Product Group, Inc. filed this lawsuit against defendants Janice M. Shields and Paul W. Shields, individually and as trustees of the Shields Family Trust, and Angele Innovations, LLC.  Plaintiff seeks a declaratory judgment declaring that it has not infringed on the '498 Patent and that the '498 Patent is invalid.  *See* Doc. 49 (Amended Complaint) at ¶¶ 36–41.  Defendants assert counterclaims in their Answer, including a claim for patent infringement against counterclaim defendants Neonatal Product Group, Inc., Creche, and Millennium Marketing Group, Ltd., who defendants/counterclaimants allege are making, using, selling, offering to sell, or importing neonatal substrate warmers that infringe the '498 Patent, without license or authority from defendants/counterclaimants.  Doc. 53 (Amended Answer and Counterclaims) at ¶¶ 54–62.

This matter comes before the Court on the parties' request that the Court construe 13 terms in the '498 Patent as a matter of law in accordance with *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  Plaintiff Neonatal Product Group, Inc. ( "plaintiff") and defendants/counterclaimants Janice M. Shields, Paul W. Shields, and Angele Innovations, LLC ( "counterclaimants") have each submitted claim construction briefs that urge the Court to adopt their proposed constructions of the 13 disputed terms in the '498 Patent.  *See* Docs. 73 (counterclaimants' brief) & 74 (plaintiff's brief).  The parties also have responded to each other's claim construction briefs.  *See* Docs. 76 (counterclaimants' response) & 77 (plaintiff's response).  The Court has considered the information submitted in the parties' briefs and responses as well as the oral arguments presented at the *Markman* hearing on December 22, 2015, and construes the 13 disputed terms in the fashion explained below.

## I.    Legal Standard

A patent must describe the "exact scope of an invention" so that the patentee secures his or her right to "'all to which he [or she] is entitled'" and informs "'the public of what is still open

to them.'" *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) (quoting *McClain v. Ortmayer*, 141 U.S. 419, 424 (1891)).  To achieve these objectives, a patent document contains two distinct elements:  (1) a specification which "describ[es] the invention 'in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same;'" and (2) one or more claims which "'particularly poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention.'"  *Id.* (quoting 35 U.S.C. § 112 (further citations omitted)).

A patent's claims define the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  "A claim covers and secures a process, a machine, a manufacture, a composition of matter, or a design, but never the function or result of either, nor the scientific explanation of their operation."  *Markman*, 517 U.S. at 373 (citation and internal quotation marks omitted).  The claims serve "to forbid not only exact copies of an invention, but [also] products that go to the heart of an invention but avoid[ ] the literal language of the claim by making a noncritical change."  *Id.* at 373–74 (citation and internal quotation marks omitted).

In a patent infringement case, the Court must determine whether the patent claims cover the alleged infringer's product.  *Id.* at 374 (citation omitted).  To do so, the Court must decide what the words in the claim mean.  *Id.* (citation omitted); *see also Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1250 (D. Kan. 2009) (explaining that "[p]roof of infringement requires construction of the patent claims to determine their scope and comparison of the construed claims to the accused device." (citing *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1370 (Fed. Cir. 2007) (further citations omitted))).

The Federal Circuit Court of Appeals established guiding principles for claim construction in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).  Claim construction

begins by considering the language of the claims themselves.  *Id.* at 1312 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (further citations omitted)).  When constructing claim terms, the Court generally should give terms their ordinary and customary meaning.  *Id.* (citation omitted).  That is, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application."  *Id.* at 1313 (citations omitted).  The claims themselves provide "substantial guidance" for determining "the meaning of particular claim terms."  *Id.* at 1314.  Both "the context in which a term is used in the asserted claim" and the "[o]ther claims of the patent in question" also help the Court determine the ordinary meaning of a term.  *Id.*

The claims, however, "do not stand alone."  *Id.* at 1315.  Instead, the claims "are part of a fully integrated written instrument consisting principally of a specification that concludes with the claims."  *Id.* (citation and internal quotation marks omitted).  Therefore, the Court must read the claims "in view of the specification, of which they are a part."  *Id.* (citation and internal quotation marks omitted).  The Federal Circuit has described the specification as "the single best guide to the meaning of a disputed term" and "[u]sually it is dispositive."  *Id.* (citation and internal quotation marks omitted).

The specification may contain "a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess."  *Id.* at 1316.  When that happens, the patentee's definition controls.  *Id.*  Alternatively, the specification "may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor."  *Id.*  When this happens, the patentee "has dictated the correct claim scope, and [his or her] intention, as expressed in the specification, is regarded as dispositive."  *Id.* (citation omitted).  But the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must

4

be construed as being limited to that embodiment." *Id.* at 1323.  In the end, the Court must construe the claim in a way that "'stays true to the claim language and most naturally aligns with the patent's description of the invention.'" *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

The Court "should also consider the patent's prosecution history, if it is in evidence." *Id.* at 1317 (citation and internal quotation omitted).  The prosecution history is considered "intrinsic evidence" and it includes "the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* (citation omitted).  Like the specification, the prosecution history helps demonstrate how the inventor understood the patent during the process of explaining and obtaining the patent. *Id.*  But "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*  Nevertheless, the prosecution history may enhance the meaning of the claim language by showing how the patentee understood the invention and whether the patentee limited the claim language during the prosecution, thereby narrowing the scope of the claim. *Id.* (citations omitted).

Last, the Court may rely on extrinsic evidence when construing the claims. *Id.* (citation omitted).  Extrinsic evidence includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* (citation and internal quotation marks omitted).  Dictionaries and treatises are useful tools to help a court determine the meaning of a term to those skilled in the art in question. *Id.* at 1318.  But the Federal Circuit has cautioned that extrinsic evidence is less reliable than the patent and prosecution history. *Id.*  It is useful only if considered in the context of the intrinsic evidence.

*Id.* at 1319.  The Court thus has discretion to admit and use extrinsic evidence but "should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly."  *Id.*

Some claim terms in the '498 Patent are written as means-plus-function terms.  A means-plus-function claim term is governed by 35 U.S.C. § 112(f).  This provision allows an inventor to express a claim in functional terms instead of defining the structural elements or components that accomplish the function.  *See* 35 U.S.C. § 112(f).  The construction of a means-plus-function claim term is a two-step process.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir. 2015).  First, the Court must identify the claimed function.  *Id.* (citing *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012)).  Second, the Court must determine what structure included in the specification, if any, accomplishes the claimed function.  *Id.*

## II.    Analysis

The parties ask the Court to construe the following 13 terms, phrases, or clauses from the '498 Patent:  (1) "heater block," (2) "void," (3) "well," (4) "removable reservoir," (5) "means for heating said at least one removable reservoir," (6) "heating element for heating said heating fluid," (7) "means for vibrating said heater block," (8) "vibrating device for vibrating said heater block," (9) "vibrating platform upon which said heater block is mounted," (10) "switch mounted to said heater block," (11) "heater block further comprises at least one indicator light mounted thereto," (12) "thermostat device mounted to said heater block," and (13) "resister coil."

The disputed terms appear in Claims 1–7, 9–11, 13, 14, 16, and 17 of the '498 patent (Doc. 1-1 at 8–9).  Several of the disputed terms appear in two independent claims—for example, Claim 1 and Claim 10.  The language of Claim 1 is recited below with the disputed claim terms bolded:

A heating device comprising:

a **heater block** comprising at least one **void** therein;

6

at least one **removable reservoir** disposed within said at least one **void** of said **heater block**; and

**means for heating** said at least one **removable reservoir**, said **means for heating** being disposed between said at least one **removable reservoir** and said **heater block** within each said at least one **void**.

Doc. 1-1 at 8 (col. 6 ll. 46–53).  The language of Claim 10 reads:

A liquid container heating device for a liquid to a desired temperature, said liquid container heating device using heat exchange of a heating fluid with a container, said liquid container heating device comprising:

a **heater block** comprising at least one **well** therein;

at least one **removable reservoir** for receiving said heating fluid, said at least one **removable reservoir** being disposed within said at least **well** of said **heater block**; and

at least one **heating element for heating said heating fluid**, said at least one **heating element** being disposed between said at least one **removable reservoir** and said at least one **well** of said **heater block**;

wherein said container is placed in said heating fluid, said at least one **removable reservoir**, said at least one **heating element** heats said at least one **removable reservoir** and said heating fluid, and said heating fluid in turn heats said container, whereby said liquid within said container rendered suitably heated for use.

Doc. 1-1 at 9 (col. 7 ll. 13–30).

The Court addresses the 13 disputed claim terms below.  This discussion begins by providing the parties' proposed constructions in table format.  The Court then explains the parties' reasoning for their proposed constructions in the accompanying text.  And last, the Court determines the appropriate construction, using the governing standard recited above.

### A. "heater block"

| Term | Plaintiff's Construction | Counterclaimants' Construction |
|------|--------------------------|--------------------------------|
| heater block | "a solid piece of material, having at least one flat side, that supports another structure" | "a housing assembly" |

Plaintiff asserts that its proposed construction of "heater block" is consistent with the plain, ordinary meaning of block as found in the dictionary. Plaintiff provides the following dictionary definition for "block:" "A solid piece of a hard substance, such as wood, having one or more flat sides . . . Such a piece used as a construction member or as a support." Doc. 74-2 (citing *Block*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015), https://ahdictionary.com/word/search.html?q=block).

Plaintiff conceded at oral argument that the dictionary definition is extrinsic evidence. As explained above, extrinsic evidence is less reliable than intrinsic evidence, which includes the language of the patent itself and the prosecution history. *Phillips*, 415 F.3d at 1318. And extrinsic evidence is useful only when considered in the context of the intrinsic evidence. *Id.* at 1319. So, plaintiff also relies on the intrinsic evidence and asserts that the claim language supports its proposed construction.

Claim 1 describes the heater block as having "at least one void therein" and "at least one removable reservoir disposed within." Claim 10 describes the heater block as having "at least one well therein" and "at least one removable reservoir being disposed within." Doc. 1-1 at 8–9 (col. 6 ll. 47–48; col. 7 ll. 17–18). Plaintiff argues that this claim language describes a "block" that has at least one void, well, and removable reservoir machined inside a solid piece of material.

Plaintiff also argues that its construction comports with the specification stating that the heater block is "preferably rectangular and is preferably composed of an insulative type of material such as cork, synthetic cork, or a thermoset polymer.  Alternatively, the heater block **30** can be composed of a thermoplastic or ceramic material."  Doc. 1-1 at 7 (col. 4 ll. 14–16).  The specification describes a heater block that is manufactured "preferably by cutting a block of cork from raw stock and machining necessary features therein."  *Id.* (col. 4 ll. 17–20).  Or, "[a]lternatively, a synthetic cork or thermoset polymer material can be molded to the desired shape and features of the heater block **30**."  *Id.* (col. 4 ll. 20–22).  The specification also provides that the heater block is mounted to a vibrator, which generally is of a flat, rectangular shape.  *Id.* (col. 4 ll. 2–4, 12).  Thus, plaintiff argues, the specification describes the heater block as a solid block of material, and it contends that the specification language cannot support any alternative definition.  Finally, plaintiff asserts that Figure 2 of the '498 patent (Doc. 1-1 at 5) depicts a solid flat-bottomed structure, which supports plaintiff's proposed construction.

Counterclaimants respond, arguing that plaintiff's proposed construction adds limitations not present in the claim and contrary to the specification.  Counterclaimants assert that the specification does not limit the heater block to "a solid piece of material" or as something "having at least one flat side" or "supporting another structure."  Instead, the specification states that the heater block may be manufactured by molding synthetic cork or thermoset polymer material to the desired shape and features of the heater block.  And, while counterclaimants concede that the specification states that the heater block "preferably" is composed of an insulative type of material, they contend that the use of the word "preferably" suggests that this is not the only design and thus does not require a solid piece of material.  Counterclaimants also criticize plaintiff's reliance on the dictionary to construe the claim because it is extrinsic

evidence that is less reliable than the specification and the claims when construing the claim terms.

Counterclaimants propose, instead, that the Court construe the term "heater block" as "a housing assembly." Counterclaimants assert that Figures 1A and 2 of the '498 patent (Doc. 1-1 at 3, 5) support this construction. They argue that the heater block, noted by reference to numeral 30 in Figures 1A and 2, shows that the heater block "houses" components that are mounted on the device. They also contend that reference numeral 30 points to a structure, not a solid piece of material, as plaintiff argues.

Plaintiff responds that counterclaimants' proposed construction of "housing assembly" is unsupported by the intrinsic and extrinsic evidence. Indeed, the words "housing" and "assembly" appear nowhere in the claims or the specification of the '498 patent. Plaintiff contends that if the inventor had intended to describe a housing assembly, then the inventor should have used those words in the patent. Plaintiff also asserts that a "housing assembly" would cover individual sheets of material that one could assemble together, but that is not what the specification describes. Rather, the specification describes a variety of materials that one could use to construct a block.

After considering these arguments, the Court concludes that the intrinsic evidence supports plaintiff's construction that the "heater block" is "a solid piece of material, having at least one flat side." The specification describes a heater block constructed from solid materials, preferably cork, synthetic cork, thermoset polymer, or, alternatively, thermoplastic or ceramic material. And both the claim language and specification describe a heater block, in which one can machine certain features. These descriptions demonstrate that the heater block is something made of solid material. The specification also provides that the heater block is mounted to a

vibrator, which generally is of a flat, rectangular shape. *Id.* (col. 4 ll. 2–4, 12). And the figures depict the heater block as having multiple flat sides. Both of these references in the specification are consistent with plaintiff's proposed construction of "having at least one flat side."

In contrast, the Court finds no support in the intrinsic evidence for plaintiff's proposed construction that the heater block "supports another structure." The Court thus omits this part of plaintiff's proposed construction from the definition it adopts.

Finally, and though it is extrinsic evidence, the dictionary definition of "block" is useful when considered in the context of the intrinsic evidence. Plaintiff's proposed construction is more consistent with the dictionary definition of "block," given that the specification uses language to describe the heater block as something constructed out of solid material. The specification also shows that the heater block has at least one flat side. The Court thus construes the term "heater block" as "a solid piece of material, having at least one flat side."

### B. "void" and "well"

| Term | Plaintiff's Construction | Counterclaimants' Construction |
|------|--------------------------|-------------------------------|
| **void** | "an empty space formed in the heater block" | "a well; empty space" |
| **well** | "a shaft formed in the heater block" | "a void; empty space" |

The Court addresses these two claim terms together because counterclaimants assert that the specification uses the terms "void" and "well" interchangeably and thus they should have the same meaning. Counterclaimants argue that both terms mean "an empty space." They say that these terms are understood by one of ordinary skill in the art, are used according to their common meanings, and do not require construction by the Court.

Plaintiff argues, in contrast, that these two terms cannot have the same meaning because such a construction ignores the presumption that different claim terms have different meanings. *See*, *e.g.*, *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) (explaining that "[i]n the absence of evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."). Plaintiff argues that nothing in the '498 patent demonstrates that the inventor intended these terms to have the same meaning. Instead, plaintiff contends, the Court should construe the two claim terms to have different meanings, consistent with the presumption that each claim term has a different meaning and consistent with these two terms' plain and ordinary meanings.

Plaintiff asserts that the plain and ordinary meaning of these terms is found in their dictionary definitions, and provides the following dictionary definitions for each term. "Void" is defined as "[a]n empty space." Doc. 74-3 (citing *Void*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015), https://ahdictionary.com/word/search.html?q=void). "Well" is defined as "[a] deep hole or shaft sunk into the earth to obtain water, oil, gas, or brine." Doc. 74-4 (citing *Well*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015), https://ahdictionary.com/word/search.html?q=well). Plaintiff argues that its proposed constructions are consistent with these two, different dictionary definitions.

The language of the '498 patent supports plaintiff's argument that these two terms have different meanings. Counterclaimants contend that the patent uses these two terms interchangeably, but they cite only one aspect of the specification to support their argument. And, in that one instance, the use of the terms is not interchangeable. The specification states: "The heating chamber **32** is defined primarily by a void *or* well **38** that is machined or formed in the heater block **30**." Doc. 1-1 at 7 (col. 4 ll. 38–40) (emphasis added). The use of the word "or"

does not necessarily mean that "void" and "well" are synonymous terms.  Indeed, it could mean that they are not synonymous.  Without additional language in the specification showing that the inventor intended for these two words to have the same meaning, the Court cannot find that these two terms mean the same thing.  To the contrary, the Court must presume that different terms have different meanings.  *See CAE Screenplates Inc.*, 224 F.3d at 1317 (Fed. Cir. 2000); *see also Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) (explaining that the Federal Circuit's precedent "instructs that different claim terms are presumed to have different meanings").  The Court thus rejects counterclaimant's proposed construction that equates these two terms' meanings.

The parties agree that a "void" is "an empty space" but counterclaimants object to plaintiff's proposed language of "formed in the heater block."  Counterclaimants argue that plaintiff's proposed language is redundant to language that already appears in the claim.  Claim 1 describes the void as something located "therein" the heater block.  Doc. 1-1 at 8 (col. 6 ll. 47).  Thus, counterclaimants say, when the construction of this term is inserted into the claim itself, plaintiff's proposed construction is redundant because the claim language already contains references to the "void" as something located in the heater block.  But the Federal Circuit has determined that redundancies in a claim construction, without more, do not render the construction incorrect.  *See Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1400 n.1 (Fed. Cir. 2008) (citing *Nystrom v. Trex Co.*, 424 F.3d 1136, 1142–43 (Fed. Cir. 2005)).  And, while plaintiff's proposed construction of "void" may contain some redundancies when one reads it into the claim language, the construction still is consistent with the claim language.  It is also consistent with the specification which describes a void "that is machined or *formed in the heater*

*block* **30**." Doc. 1-1 at 7 (col. 4 ll. 39–40) (emphasis added). Thus, the Court adopts plaintiff's proposed construction of "void" as "an empty space formed in the heater block."

The Court also adopts plaintiff's proposed construction of "well" because it is more consistent with the intrinsic and extrinsic evidence. Counterclaimants ask the Court to construe "well" to mean "an empty space." They assert that the specification supports their putative construction because it identifies "well" as reference numeral 38, and, on Figure 2, reference numeral 38 depicts an "empty space." But, for reasons explained above, the claim language fails to demonstrate that "well" has the same meaning as "void" in the '498 patent.

Plaintiff argues that its proposed construction of "a shaft formed in the heater block" is more consistent with the language used in the specification. The specification references prior art for dry block heaters used to heat test tubes. It describes this prior art as having "[a] series of tube wells [that] are typically arranged in a pattern within the metal block." Doc. 1-1 at 6 (col. 2 ll. 41–42). The specification further explains that "[t]he tube wells are of a necessarily fixed diameter to accept a slightly undersized test tube, thereby establishing a close fitting relationship between the metal block and test tubes to enable effective heat transfer therebetween." *Id.* (col. 2 ll. 46–50). Plaintiff claims that this description of the term "well" in the prior art describes a circular shaft machined into the block, and thus, plaintiff argues, the specification's language supports its proposed construction. While this description does not use the term "shaft" the Court agrees that a "shaft" is consistent with the ordinary and customary meaning of "well." This construction also is supported by the dictionary definition, when considered in the context of the intrinsic evidence.

Counterclaimants also argue that the limitation imposed by adding the words "formed in the heater block" to plaintiff's construction of "well" is redundant and unnecessary. But, as

explained above, a court need not reject a proposed claim construction simply because it contains redundancies.  *See Netcraft Corp.*, 549 F.3d at 1400 n.1 (citing *Nystrom*, 424 F.3d at 1142–43).  Claim 10 refers to the well as something located "therein" the heater block.  Doc. 1-1 at 9 (col. 7 ll. 17).  And, the specification describes a well "that is machined or *formed in the heater block* **30**."  *Id.* at 7 (col. 4 ll. 39–40) (emphasis added).  Plaintiff's proposed construction of "well" may prove redundant when it is inserted in the claim language, but it nevertheless comports with the claim language and specification.  The Court thus construes the term "well" as "a shaft formed in the heater block."

For the reasons explained, the Court adopts plaintiff's proposed constructions of "void" and "well."

### C.  "removable reservoir"

| Term | Plaintiff's Construction | Counterclaimants' Construction |
|---|---|---|
| **removable reservoir** | "a liquid-holding receptacle designed to be removed as part of ordinary use" | "a reservoir that is capable of being removed" |

The parties' proposed constructions have two parts.  First, they dispute the meaning of the term "reservoir."  Second, the parties dispute the meaning of "removable."  The Court addresses each dispute, below.

Plaintiff defines a "reservoir" as a "liquid-holding receptacle."  Plaintiff argues that this definition is consistent with the intrinsic evidence.  First, Claim 10 provides that the removable reservoir is "for receiving said heating fluid."  Doc. 1-1 at 9 (col. 7, ll. 18–19).  Second, the patent abstract provides:  "The device includes a heater block having multiple wells, therein, and removable reservoirs disposed respectively within the wells for receiving the water."  Doc. 1-1 at 2.  Third, the specification repeatedly asserts that the reservoir is intended to contain water.  *See*

Doc. 1-1 at 7 (col. 3 ll. 6–10 ("Several removable reservoirs for receiving the water are disposed

respectively within the wells of the heater block.  Several heating elements are provided for

heating the removable reservoirs and the water contained therein."), col. 3 ll. 18–19 ("The heat

flows easily through each removable reservoir, through the water contained therein . . . ."), col. 4

ll. 43–44 ("a removable reservoir **44** filled with a heat-conducting medium, such as water **46**.")).

Plaintiff also contends that its proposed construction is consistent with the dictionary definition

for the word reservoir, which it defines "[a] receptacle or chamber for storing a fluid."  Doc. 74-5

(citing *Reservoir*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015),

https://ahdictionary.com/word/search.html?q=reservoir).

Counterclaimants assert that the term "reservoir" requires no construction.  In their brief,

counterclaimants argue that plaintiff has added limitations not present in the claims or supported

by the specification.  The Court disagrees.  As explained above, the claim language, abstract, and

specification all support plaintiff's construction that a "reservoir" is a "liquid-holding

receptacle."

Next, the parties dispute the meaning of the term "removable."  Plaintiff defines

"removable" as "designed to be removed as part of ordinary use."  Plaintiff argues that the

specification supports its proposed construction because it provides that the reservoir "is inserted

a top the heating element **42**" and "may be removed to enable easier cleaning thereof and to

provide access to the heating element **42** for replacement or repair."  Doc. 1-1 at 7–8 (col. 4 ll.

64–col. 5 ll.1).

Counterclaimants argue that the Court should construe "removable" as something

"capable of being removed."  They argue that this construction is more fully consistent with the

patent language, which states that the reservoir "may be removed" but does not require removal of the reservoir as part of the device's ordinary use.

Plaintiff responds, arguing that counterclaimants' proposed construction is misleading and incomplete because, plaintiff argues, anything is "capable of being removed" if one intends to destroy the structure, an action not contemplated here by the specification. For example, in *Little Giant Pump Co. v. Diversitech Corp.*, 505 F. Supp. 2d 1107, 1111 (W.D. Okla. 2007), the parties disputed the term "removably supported" in a patent. In that case, defendant argued that "removably supported" excluded all permanent means of attachment. *Id.* And, thus, defendant argued that its device, which used rivets as fasteners and were not meant to be removed, did not infringe on plaintiff's patent as a matter of law. Plaintiff argued, in contrast, that the patent did not specify the type of fasteners used on the device, and, in any event, the rivets on defendant's device were not permanent fasteners because one could remove them. *Id.* The court rejected plaintiff's proposed construction in *Little Giant Pump*. *Id.* It first noted that "a 'rivet-made permanent connection is of course not 'infinitely' permanent, because a rivet can be broken.'" *Id.* (quoting *K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1365 (Fed. Cir. 1999)). And, thus, the court concluded that the "common, ordinary meaning of removable or removably, however, does not include breaking what is meant to be a permanent connection." *Id.* And so, *Little Giant Pump* construed the term "removably supported" as defendant proposed—excluding all permanent means of attachment. *Id.* at 1111–12.

Similarly, the Federal Circuit considered a patent for a child's car seat that described a seat that is "removably secured" to a base and a base that is "removably attached" to the seat. *Dorel Juvenile Group, Inc. v. Graco Children's Prods., Inc.*, 429 F.3d 1043, 1044–45 (Fed. Cir. 2005). The Circuit affirmed the district court's construction of the terms "removably secured"

and "removably attached" as ones meaning that "the claimed product is *designed* to come apart." *Id.* at 1045–46 (emphasis added). It also affirmed the district court's conclusion that the terms "carr[ied] with them an implication that the detachment or unsecuring process [does] not do violence to the seat." *Id.* (citation and internal quotation marks omitted).

Based on the principles embraced by these cases, the Court agrees with plaintiff that counterclaimants' proposed construction—"capable of being removed"—is too broad. As plaintiff argues, anything can be removed if one is willing to destroy the device to remove it. But destruction is not contemplated by the patent's language, and so the Court concludes that the proper construction for "removable" is "designed to be removed." This construction is supported by the specification which states that the reservoir "may be removed."

But the Court declines to include the remaining portion of plaintiff's proposed construction because the words "as part of ordinary use" lack support in the patent's language. In *Dorel Juvenile Group*, the Federal Circuit refused to construe the terms "removably attached" and "removably secured" as including "ease of separation" because the specification contained no indication that the base and seat come apart "during everyday usage." 429 F.3d at 1046. Likewise, in this case, the specification contains no reference to users removing the reservoir as part of ordinary use. Instead, it states only that the reservoir "may be removed." Without appropriate support for the limitation plaintiff proposes, the Court refuses to include the words "as part of ordinary use" in its construction of this term.

For these reasons, the Court agrees with plaintiff's construction of "removable" as "designed to be removed." But it refuses to include the additional limitation of "as part of ordinary use" because counterclaimants argue, correctly, that the patent's language will not

support this construction.  In sum, the Court construes the term "removable reservoir" as "a

liquid-holding receptacle designed to be removed."

### D. "means for heating said at least one removable reservoir" and "heating element for heating said heating fluid"

| Term | Plaintiff's Construction | Counterclaimants' Construction |
|---|---|---|
| **means for heating said at least one removable reservoir** | The function is to heat the removable reservoir or the heating fluid.  The disclosed structure requires at least "a rigid resistor coil wound in a spiral pattern," "a flexible resistor coil similar to those found in a household toaster," or a "gas fired heat supply" that is similar to those found in well-known consumer household appliances and that is located between the removable reservoir and the heater block.[1] | "a heating element and equivalents thereof" |
| **heating element for heating said heating fluid** | The same construction as the "means for heating" limitation, directly above. | "an element that heats the heating fluid" |

The Court addresses two claim terms in this next section because the parties' arguments

for the two terms are similar.  First, the parties agree that the phrase "means for heating" is a

means-plus-function phrase that the Court must interpret under 35 U.S.C. § 112(f).  But the

parties disagree about how the Court should construe the claimed function in its means-plus-

function construction.  Second, plaintiff asserts that the term "heating element" is also a means-

plus-function phrase.  And, plaintiff contends that this term means the same thing as "means for

heating said at least one removable reservoir."  Counterclaimants disagree.  Counterclaimants

---

[1] At oral argument, plaintiff stated its willingness to remove the language, "that is located between the removable reservoir and the heater block," from its proposed construction.

contend that "heating element" requires no construction by the Court.  Instead, the term means

what it says:  a heating element.  The Court takes up each of these terms, in sequence, below.

First, the Court addresses the term "means for heating."  This term appears in Claim 1,

and it describes a "means for heating said at least one removable reservoir . . . ."  Doc. 1-1 at 8

(col. 6 l. 50).  The use of the term "means" in the claim language creates a rebuttable

presumption that 35 U.S.C. § 112(f) applies.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339,

1348 (Fed. Cir. 2015) (citing *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161

F.3d 696, 703–04 (Fed. Cir. 1998)).  Section 112(f) provides:

> An element in a claim for a combination may be expressed as a means or step for
> performing a specified function without the recital of structure, material, or acts in
> support thereof, and such claim shall be construed to cover the corresponding
> structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112(f).

Here, the Court agrees with the parties.  The term "means for heating" is a means-plus-

function phrase.  Indeed, the claim language contains no description of a structure to rebut the

presumption that the phrase is a means-plus-function term created by the use of "means" in the

claim.  *See Williamson*, 792 F.3d at 1349 (citation omitted).

When construing a means-plus-function claim term, the Court, as explained above, must

follow a two-step process.  *Williamson*, 792 F.3d at 1351.  First, the Court must identify the

claimed function.  *Id.* (citing *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012)).

Second, the Court must determine what structure included in the specification, if any,

accomplishes the claimed function.  *Id.*

The Court first construes the claimed function of "means for heating" as "to heat the

removable reservoir."  This construction is consistent with the claim language.  Claim 1 states

that the function is to heat "at least one removable reservoir." Doc. 1-1 at 8 (col. 6 l. 51). The Court thus adopts "to heat the removable reservoir" as the claimed function.

The Court next examines the specification to determine which structure accomplishes the claimed function. The "means for heating" function is identified by reference numeral 42 in Figure 2, and is described in the specification as a "heating element **42**." Doc. 1-1 at 5, 7 (col. 4 l. 51). The specification provides:

> The heating element **42** is preferably a rigid resistor coil wound in a spiral pattern about an inside bottom portion of the sleeve **40** or directly inside the well **38** if the sleeve **40** is not used. The heating element **42** is similar to those found on stovetop ranges or toaster ovens in a household kitchen, and is similarly water resistant. Alternatively, the heating element **42** could be flexible, similar to those found in a household toaster. A wire connector **48** connects to the heating element **42** to supply electricity thereto, as will be discussed hereinafter. In the alternative, it is contemplated that a gas fired heat supply could replace the electrical heating element **42**.

Doc. 1-1 at 7 (col. 4 ll. 51–62).

Plaintiff argues, based on this language in the specification, that the Court should limit the structure of the "means for heating" to: (1) a rigid coil similar to that found in a household stovetop range or toaster oven, (2) a flexible coil similar to those found in a household toaster, or (3) a gas-fired heat supply similar to those found in well-known consumer household appliances.

Counterclaimants respond that plaintiff's proposed construction is too narrow. They contend that plaintiff's proposed construction improperly limits the structure to the three types listed above (*i.e.*, a rigid resistor coil, a heating element that is flexible, or a gas fired heat supply). Counterclaimants argue that the three structures described in the specification merely serve as examples and that the specification does not limit the structure to just these three structures. Counterclaimants also argue that, by including these limitations, plaintiff's proposed construction improperly omits equivalent heating elements that are described in the specification.

21

Instead, counterclaimants propose the Court should construe the structure as "a heating element and equivalents thereof."  In support of this construction, they assert that the specification describes the "means for heating" as a "heating element **42**."  *See id.* (col. 4 l. 51). And they thus ask the Court to construe the structure of a "means for heating" as "a heating element and equivalents thereof," in accordance with 35 U.S.C. § 112(f).  *See* 35 U.S.C. § 112(f) (explaining that a means-plus-function claim is construed to cover "the corresponding structure, material, or acts described in the specification *and equivalents thereof*.") (emphasis added)).  The Court agrees with counterclaimants.

Contrary to plaintiff's argument, the specification does not restrict the scope of the structure to the three types described.  The specification states that the heating element "preferably" is a rigid coil similar to that found in a household stovetop range or toaster oven.  It also provides two alternatives—the heating element also could be a flexible coil similar to those found in a household toaster or a gas-fired heat supply similar to those found in well-known consumer household appliances.  Doc. 1-1 at 7 (col 4 ll. 51–63).  The language of the specification contains no words limiting the structure to these three types of structures.  Instead, it merely describes a preference and two alternative structures for the heating element.

Plaintiff also argues that if the structures disclosed in the specification are as broad as counterclaimants now claim, they do not disclose adequate corresponding structure and thus are invalid for indefiniteness.  *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1374 (Fed. Cir. 2015).  In *Media Rights*, the Federal Circuit held that a patent's specification failed to disclose a structure that performed all four of the claimed functions, and thus the term was indefinite.  *Id.*  But this isn't so here.  The specification in the '498 Patent discloses the structure (a heating element) that performs the claimed function (that is, to heat the

22

removable reservoir).  As counterclaimants explain, one of ordinary skill in the art would understand that the phrase "means for heating" means "a heating element or equivalents thereof."  Thus, the Court rejects plaintiff's claim that that the proposed construction renders the claim indefinite.

Finally, counterclaimants are entitled to the inclusion of "and equivalents thereof" in the construction.  The governing statute specifically states that a means-plus-function claim is construed to cover "the corresponding structure, material, or acts described in the specification *and equivalents thereof.*"  35 U.S.C. § 112(f) (emphasis added).  Thus, the Court includes "and equivalents thereof" in the construction, as counterclaimants propose.

For these reasons, the Court construes the term "means for heating" as a means-plus-function phrase.  The function of the term "means for heating" is "to heat the removable reservoir."  And the structure of the term includes "a heating element and equivalents thereof."

This leads to construction of the second term, "heating element for heating said heating fluid," that appears in Claim 10.  *See* Doc. 1-1 at 9 (col. 7 l. 21).  Plaintiff asserts that this term is also a means-plus-function phrase.  Counterclaimants disagree, contending that this term does not need any construction.  Instead, counterclaimants argue, the Court should construe the term as it is stated in the claim language—as "a heating element."

As stated above, the use of the term "means," in the claim language, creates a rebuttable presumption that 35 U.S.C. § 112(f) applies.  *Williamson*, 792 F.3d at 1348 (citing *Personalized Media Commc'ns, LLC*, 161 F.3d at 703–04).  But the absence of the word "means" also creates a rebuttable presumption:  "this time that 35 U.S.C. § 112[(f)] does not apply."  *Id.* (citing *Personalized Media Commc'ns, LLC*, 161 F.3d at 703–04).  When "means" is omitted from a claim, a party may rebut the presumption that § 112(f) does not apply by "demonstrat[ing] that

23

the claim term fails to 'recite[ ] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

Plaintiff asserts that the term "heating element" does not provide a sufficiently definite structure to preclude interpretation using means-plus-function. *See MIT v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) (explaining that terms such as "mechanism," "element," and "device" "typically do not connote sufficiently definite structure" to avoid means-plus-function treatment). Plaintiff claims that the function disclosed by the term is to heat the removable reservoir and/or the heating fluid contained therein. And plaintiff asserts that the disclosed structure is the same one that it proposed for the term "means for heating." That is, plaintiff argues, the Court should limit the structure to the three types described in the specification: (1) a rigid coil similar to that found in a household stovetop range or toaster oven, (2) a flexible coil similar to those found in a household toaster, or (3) a gas-fired heat supply similar to those found in well-known consumer household appliances. *See* Doc. 1-1 at 7 (col 4 ll. 51–63).

Counterclaimants dispute that the words "heating element for heating said fluid" requires means-plus-function treatment. Counterclaimants argue that this term identifies the mechanism that performs the function—a heating element—and therefore it is not a means-plus-function limitation. Counterclaimants distinguish "heating element" from the terms described in the *MIT* case. *MIT* explained that a generic term, such as the term "element," typically requires means-plus-function construction if it fails to suggest a sufficiently definite structure. *MIT*, 462 F.3d at 1354. But, here, the disputed term does not consist of just the word "element." Instead, the claim language describes a "heating element," which, counterclaimants contend, sufficiently identifies the mechanism that performs the function.

As support for their argument, counterclaimants cite *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996). The Federal Circuit explained in that case: "[t]he fact that a particular mechanism . . . is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6)." *Id.* at 1583. The Circuit also noted that "[m]any devices take their names from the functions they perform. The examples are innumerable, such as 'filter,' 'brake,' 'clamp,' 'screwdriver,' or 'lock.'" *Id.* The Circuit concluded that the term "detent mechanism," found in the claim language at issue, was one such functional term. *Id.* And it held that the district court erred by construing the term as a means-plus-function phrase under 35 U.S.C. § 112(f). *Id.* at 1583–84.

Likewise, here, the term "heating element" is a functional term like the one described in *Greenberg*. One of ordinary skill in the art would understand this term to mean "an element that heats." The Court thus agrees with counterclaimants that the term "heating element for heating said heating fluid" is not a means-plus-function phrase. The claim identifies "a heating element" as the mechanism that performs the function. The claim thus sufficiently recites a definite structure. Consequently, plaintiff has failed to rebut the presumption that 35 U.S.C. § 112(f) does not apply. *See Williamson*, 792 F.3d at 1348 (quoting *Watts*, 232 F.3d at 880).

For these reasons, the Court rejects plaintiff's proposed construction of "heating element for heating said heating fluid" as a means-plus-function phrase. The Court finds that counterclaimants' proposed construction is supported by the claim language, and so it construes the term "heating element for heating said heating fluid" to mean "an element that heats the heating fluid."

### E.   "means for vibrating said heater block" and "vibrating device for vibrating said heater block"

| Term | Plaintiff's Construction | Counterclaimants' Construction |
|------|--------------------------|-------------------------------|
| means for vibrating said heater block | The function is to vibrate the heater block.  The disclosed structure is a "generally flat, rectangular shape and has suction cup feet . . . a switch . . . a power cord  . . . and raised comers [sic]' for retaining the heater block on top thereof.  The suction cup feet "render the vibrator suitable for use on a counter top." | "a vibrator and equivalents thereof" |
| vibrating device for vibrating said heater block | The same construction as the "means for vibrating" limitation, directly above. | "a device that vibrates the heater block" |

As it did with other disputed terms, the Court addresses these next two disputed terms together because the parties present related arguments.  Plaintiff argues that the terms "means for vibrating said heater block" and "vibrating device for vibrating said heater block" both are means-plus-function phrases that the Court must construe under 35 U.S.C. § 112(f).  Counterclaimants agree that the former term ("means for vibrating said heater block") is a means-plus-function phrase, but disagree that the latter term ("vibrating device for vibrating said heater block") requires means-plus-function treatment.  The Court addresses each disputed term, in turn, below.

*First,* the Court considers the term "means for vibrating said heater block," which appears in Claim 2.  *See* Doc. 1-1 at 8 (col. 6 ll. 54–57) ("The heating device as claimed in claim **1**, further comprising means for vibrating said heater block, said means for vibrating being in direct contact with said heater block.").  The Court agrees with the parties.  The phrase "means

for vibrating said heater block" is a means-plus-function phrase that the Court must interpret under 35 U.S.C. § 112(f).  The claim language contains no description of a structure to rebut the presumption that the phrase is a means-plus-function term created by the use of the word "means" in the claim.  *See Williamson*, 792 F.3d at 1349 (citation omitted).

Because this term is a means-plus-function term, the Court follows the two-step process to construe it.  *See Williamson*, 792 F.3d at 1351.  The Court first must identify the claimed function.  *Id.* (citing *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012)).  Plaintiff suggests that the function of this term is "to vibrate the heater block."  The Court agrees.  The claim language supports this construction because it states that the function is to "vibrat[e] said heater block."  Doc. 1-1 at 8 (col. 6 l. 55).  The Court thus concludes that the function of the term "means for vibrating said heater block" is "to vibrate the heater block."[2]

The Court next must decide what structure included in the specification, if any, accomplishes the claimed function.  *Williamson*, 792 F.3d at 1351.  The specification describes the structure "means for vibrating" as:

> The vibrator **20** is of a generally flat, rectangular shape and has suction cup feet **22** rendering the vibrator **20** suitable for use on a counter top.  The vibrator includes a switch **24**, a power cord **28**, and raised corners [sic] **26** for retaining an item thereto.  In general, similar such devices are typically found in chemistry laboratories, are well known in the art, and are readily available from Amerex Instruments, Inc. and Jepson Bolton, Inc., for example.

Doc. 1-1 at 7 (col. 4 ll. 4–11).

---

[2]   Counterclaimants asserted at oral argument, for the first time, that the Court should construe the function of this phrase as "to mix the contents of the reservoir."  Counterclaimants never presented this construction in their briefs or the parties' Joint Claim Construction and Pre-Hearing Statement (Doc. 66).  Our Court generally refuses to consider new arguments that a party fails to assert in its opening brief.  *See, e.g., Klima Well Serv., Inc. v. Hurley*, __ F. Supp. 3d __, 2015 WL 5637536, at *5 n.2 (D. Kan. Sept. 24, 2015) (citing *Water Pik, Inc. v. Med–Sys., Inc.*, 726 F.3d 1136, 1159 n.8 (10th Cir. 2013)).  For this reason, the Court rejects counterclaimants' proposed construction of the term's function.  But, even if counterclaimants had presented their proposed construction to the Court in a timely fashion, the Court would not adopt it because the claim language contains no support for their belated construction.

Based on the language of the specification and the claims, plaintiff asserts that the Court should construe the term "means for vibrating" to require the claimed structures:  (1) to be of a generally, flat rectangular shape; (2) to have a switch, a power cord, and raised corners for retaining an item thereto; and (3) to have suction-cup feet, making it suitable for use on a countertop.

In contrast, counterclaimants argue that plaintiff's proposed construction is too narrow because it contains the limitations described above.  Counterclaimants argue that the limitations in the specification are just examples and, thus, plaintiff's proposed construction fails to include other examples of vibrators described by the claim language.   The Court agrees.  The specification depicts the "means for vibrating" feature as reference numeral 20 in Figures 1A and 2, and it describes this feature as "a shaker or vibrator **20**."  Doc. 1-1 at 7 (col. 4 ll. 1–11).  The specification then provides additional limitations that "generally" may accompany the structure.  But these additional limitations are not required by the specification's language.  Indeed, the specification states that the structure is well known to one skilled in the art and typically found in chemistry laboratories.  *Id.* (col. 4 l. 9); *see also id.* at 8 (col. 5 ll. 55–59) ("As mentioned above, according to the preferred embodiment of the present invention, the vibrator **20** is separate from the heater block **30**, but it will be apparent to those skilled in the art that it can also be integrated with the heater block **30** if desired.").  The Court thus concludes that the specification supports counterclaimants' proposed construction.  And it construes the term under 35 U.S.C. § 112(f) as counterclaimants suggest—"a vibrator and equivalents thereof."  *See* 35 U.S.C. § 112(f) (instructing courts to construe means-plus-function claims to cover "the corresponding structure, material, or acts described in the specification *and equivalents thereof*" (emphasis added)).

For these reasons, the Court construes the term "means for vibrating said heater block" as a means-plus-function phrase.  The function of the term "means for vibrating said heater block" is "to vibrate the heater block."  And the structure of the term includes "a vibrator and equivalents thereof."

*Second*, the Court considers the term "vibrating device for vibrating said heater block." Plaintiff asserts that this term also is a means-plus-function phrase, and it urges the Court to adopt the same construction that plaintiff proposes for "means for vibrating said heater block." Counterclaimants disagree.  They say that this term does not require means-plus-function construction, and assert, instead, that the Court need not construe this term.  They say that this term is well understood by one of ordinary skill in the art, as depicted in Figures 1A, 1B, and 2 in the specification.  Counterclaimants thus contend that this term means what it says in its plain and ordinary language:  a "vibrating device" is a "device that vibrates the heater block."

Like its arguments in the preceding section, plaintiff asserts that the term "vibrating device" does not provide a sufficiently definite structure.  Instead, plaintiff contends that the term describes a function and, therefore, the Court must interpret it as a means-plus-function phrase. *See MIT*, 462 F.3d at 1354 (explaining that terms such as "mechanism," "element," and "device" "typically do not connote sufficiently definite structure" to avoid means-plus-function treatment).  The Court disagrees.

Here, the term "vibrator" is not like the terms at issue in the *MIT* case.  Instead, the term, as stated in the claim, sufficiently identifies the structure (the vibrator) that performs the function.  As counterclaimants suggest, this structure is understood in the art and is used according to its ordinary meaning.  Thus, means-plus-function treatment is not warranted to construe this term.  *See Greenberg*, 91 F.3d at 1583 (explaining "[t]he fact that a particular

mechanism . . . is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6).").  Plaintiff fails to rebut the presumption that 35 U.S.C. § 112(f) does not apply. *See Williamson*, 792 F.3d at 1348 (quoting *Watts*, 232 F.3d at 880).  Consequently, the Court refuses to construe the term as a means-plus-function phrase.

Instead, the Court concludes that counterclaimants' proposed construction is more consistent with the claim language and the term's ordinary meaning.  The Court thus construes the term "vibrating device for vibrating said heater block" to mean "a device that vibrates the heater block."

**F.  "vibrating platform upon which said heater block is mounted," "switch mounted to said heater block," "heater block further comprises at least one indicator light mounted thereto," and "thermostat device mounted to said heater block"**

| Term | Plaintiff's Construction | Counterclaimants' Construction |
|---|---|---|
| **vibrating platform upon which said heater block is mounted** | "a raised, flat, vibrating structure fastened to and supporting the heater block" | "a platform that vibrates the heater block" |
| **switch mounted to said heater block** | "a switch fastened to and supported by the heater block" | "switch connected to the heater block" |
| **heater block further comprises at least one indicator light mounted thereto** | "at least one indicator light fastened to and supported by the heater block" | "heater block also has at least one indicator light connected to the heater block" |
| **thermostat device mounted to said heater block** | "a thermostat device fastened to and supported by the heater block" | "thermostat device connected to the heater block" |

The parties next dispute the construction of the term "mounted" in the four phrases listed in the chart above.  Plaintiff argues that the Court should construe "mounted" as "fastened to"

and "supported by."  Counterclaimants assert that the first term recited above requires no construction, and that "mounted" in the remaining three terms means "connected."

*First*, the Court considers the term "vibrating platform upon which said heater block is mounted."  This term appears in Claim 3.  *See* Doc. 1-1 at 8 (col. 6 ll. 58–60) ("The heating device as claimed in claim **2**, wherein said vibrating means comprises a *vibrating platform upon which said heater block is mounted*." (emphasis added)).  Counterclaimants argue that this term requires no construction because it means what is says—a "vibrating platform upon which said heater block is mounted" means "a platform that vibrates the heater block."  The Court agrees, in part.  The term "vibrating platform" is understood by its ordinary meaning.  It is a platform that vibrates.  But counterclaimants' proposed construction ignores the word "mounted" that the claim language uses specifically.  Thus, the Court cannot accept counterclaimants' proposed construction in total.

Plaintiff asserts that the dictionary definition of mount—"[t]o fix securely to a support"—applies to the claim language here which, plaintiff contends, the Court should interpret according to the plain and ordinary meaning.  *See* Doc. 74-6 (citing *Mount*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015), https://ahdictionary.com/word/search.html?q=mount).  Plaintiff also claims that the specification supports its proposed construction because it states in the Summary of Invention that "the heating device can be mounted atop a vibrator device that is used to agitate and mix the breast milk" and in the preferred embodiment that "[t]he heater block **30** is mounted to the vibrator **20** within the confines of the raised co[rn]ers **26**."  Doc. 1-1 at 7 (col. 3 ll. 20–22, col. 4 ll. 12–13).  Additionally, plaintiff asserts that Figures 1A and 1B (Doc. 1-1 at 3–4) show that the raised

corners are located on the top surface of the vibrating device with the heater block affixed to and supported by that surface.

Counterclaimants respond, saying that the specification contains nothing to support plaintiff's construction that the vibrating platform is "fastened to and supporting the heater block." Indeed, the specification uses no words suggesting that the vibrating platform is fastened by screws, bolts, nails, or some other type of fastener. Instead, the specification shows the vibrating platform as having raised corners in Figures 1A and 1B (denoted by reference numeral 26) that hold the heater block in its place. Doc. 1-1 at 3. But the raised corners are not "fastened" to the heater block. At oral argument, plaintiff argued that these raised corners are a type of fastener because they hold the heater block in place. The Court disagrees. The dictionary defines "fasten" as "[t]o attach firmly to something else, as by pinning or nailing." *See Fasten*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015), https://ahdictionary.com/word/search.html?q=fasten. Because the Court finds no support in the specification to show that the vibrating platform is "fastened to" the heater block, it rejects plaintiff's proposed construction.

After reviewing the specification's language and Figures 1A and 1B, the Court determines that the appropriate construction for "mounted" in this term is that the heater block "rests" upon the vibrating platform. The Court thus construes the term "vibrating platform upon which said heater block is mounted" as "a platform that vibrates and that the heater block rests upon."

*Second*, the Court addresses the remaining three disputed terms in the chart above (*i.e.*, "switch mounted to said heater block," "heater block further comprises at least one indicator light mounted thereto," and "thermostat device mounted to said heater block"). These disputed

terms appear in claims 5, 6, 9, 13, and 14.  For each of these terms, plaintiff asserts that "mounted" means "fastened to and support by."  But counterclaimants argue "mounted" means "connected."

Plaintiff objects to counterclaimants' proposed construction because, plaintiff contends, the word "connected" means "joined" or "fastened" but lacks the element of "support" that makes "mounted" different from "connected."  Plaintiff also argues that counterclaimants' proposed construction of "connected" appears only in the claims in the unrelated context of electrical connections.  Otherwise, plaintiff contends, counterclaimants' proposed construction finds no support in the specification.  The Court disagrees.

Figure 1A in the specification shows the switch (reference numeral 56), indicator light (reference numeral 58), and thermostat (reference numeral 60).  Doc. 1-1 at 3.  The specification references Figure 1A and describes that the heater block has "heating chamber switches **56** [which] are preferably rocker style switches having indicator dots (not shown) thereon for indicating when the switch is on and the heating element . . . is energized."  Doc. 1-1 at 8 (col. 5 ll. 30–33).  The specification also refers to Figure 1A when stating that "it is preferable that the heating device **10** include a built-in thermostat **60** to detect when the fluid temperature has stabilized at the desired level. . . . The thermostat **60** outputs to a light emitting diode **58** that glows or flashes when the desired temperature has been achieved . . . ."  *Id.* (col. 5 l. 61–col. 6 l.2).  And the specification further states:

> In general, the prior art of designing and manufacturing consumer appliances such as toasters, toaster ovens, coffee makers, and the like can be consulted to provide examples of how to incorporate wiring, switches, lights, timers, and thermostat devices into the present invention.  Such designs and related manufacturing methods are considered generally well known in the art, and are not set forth in great detail herein.

*Id.* (col. 6 ll. 26–33).

33

The specification's language and Figure 1A support counterclaimants' proposed construction of "mounted" to mean "connected."  In Figure 1A, the reference numerals for the switch, indicator light, and thermostat depict these elements as "connected" to the heater block.  And the specification describes that switches, lights, and timers are incorporated into the invention similar to the design and manufacture of consumer appliances.  The specification also provides that those designs are well known to one of ordinary skill in the art.  But nothing in the specification suggests the switch, indicator light, or thermostat also are "supported" by the heater block, as plaintiff proposes.  Thus, the Court refuses to include the additional limitation that the words "supported by" would impose on to the meaning of the term.

The Court adopts counterclaimants' proposed constructions of the last three terms in the chart above.  The Court construes "switch mounted to said heater block" to mean "switch connected to the heater block."  The Court construes "heater block further comprises at least one indicator light mounted thereto" as "heater block also has at least one indicator light connected to the heater block."  And the Court construes "thermostat device mounted to said heater block" as "thermostat device connected to the heater block."

### G.  "resister coil"

| Term | Plaintiff's Construction | Counterclaimants' Construction |
|---|---|---|
| resister coil | "a resister wound into rings or spirals" | "heating coil" |

Last, the parties ask the Court to construe the term "resistor coil."  This term is found in Claims 4 and 11.  Claim 4 reads:  "The heating device as claimed in claim **1**, wherein said means for heating comprises at least one resistor coil."  Doc. 1-1 at 8 (col. 6 ll. 61–62).  Claim 11

provides: "The liquid container heating device as claimed in claim **10**, wherein said at least one heating element comprises at least one resistor coil." *Id.* at 9 (col. 7 ll. 31–33).

Plaintiff argues that the Court should construe this term consistent with its plain and ordinary meaning—"a resistor wound into rings or spirals." Plaintiff asserts that the specification supports this construction because it states "[t]he heating element **42** is preferably a rigid resistor coil wound in a spiral pattern . . . ." Doc. 1-1 at 7 (col. 4 ll. 52–53). Plaintiff contends that its construction also comports with the dictionary definition which defines "coil" as "[a] series of connected spirals or concentric rings formed by gathering or winding," or "[a]n individual spiral or ring within such a series." Doc. 74-9 (citing *Coil*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015), https://ahdictionary.com/word/search.html?q=coil).

Counterclaimants argue that the Court need not construe "resistor coil." Instead, counterclaimants assert that the plain meaning of this term is well understood by one of ordinary skill in the art as shown in Figure 2, reference numeral 42, and described in the specification. In their brief, counterclaimants provide examples of resistor coils, but fail to connect them to the language of the claim or specification. Counterclaimants also provide no support from either the claim language or the specification for their proposed construction, "heating coil."

Plaintiff objects to counterclaimants' proposed construction for two reasons. First, it contends that the proposed construction fails to define coil. Second, it argues that "resistor" cannot mean "heating." If that were so, that construction conflicts with the rule that different claim terms have different meanings. Here, the claims use the word "heating" repeatedly, and, thus, the inventor must have intended for them to mean something different than "heating" when using the word "resistor." The Court agrees that counterclaimants' proposed construction

conflicts with the claim language, and therefore the Court will not construe the term as counterclaimants request.

Instead, the Court concludes that plaintiff's proposed construction is most fully consistent with the intrinsic evidence and the extrinsic evidence.  The Court thus adopts plaintiff's proposed construction for the term "resistor coil" as "a resistor wound into rings or spirals."

## III.    Conclusion

The Court has construed the disputed patent claim terms at the parties' request.  After reviewing the parties' submissions and considering the arguments presented at the hearing, the Court construes the disputed claim terms in accordance with this Order.  The Court also directs the parties to submit a planning report to Magistrate Judge K. Gary Sebelius within seven days of this Order, as the Scheduling Order (Doc. 40) requires.  *See* Doc. 40 at 16.

**IT IS THEREFORE ORDERED BY THE COURT** that the disputed terms of the '498 patent are construed as set forth in this Order.

**IT IS SO ORDERED.**

**Dated this 3rd day of May, 2016, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
