### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **NEONATAL PRODUCT GROUP, INC.,** <br><br> **Plaintiff/Counterclaim Defendant,** <br><br> v. <br><br> **JANICE M. SHIELDS, PAUL W. SHIELDS, and ANGELE INNOVATIONS, LLC,** <br><br> **Defendants/Counterclaimants,** <br><br> v. <br><br> **CRECHE INNOVATIONS, LLC, MILLENNIUM MARKETING GROUP, LTD., and SCOTT A. NORMAN,** <br><br> **Counterclaim Defendants.** | Case No. 13-2601-DDC-KGS |

### MEMORANDUM AND ORDER

This is a patent infringement dispute. Back in late 2013, plaintiff Neonatal Product Group, Inc. ("Neonatal"), doing business as Creche Innovations, LLC ("Creche") filed this lawsuit against Janice M. Shields and Paul W. Shields, and Angele Innovations, LLC (collectively, "the Shields Defendants"). Doc. 1. Neonatal sued Mr. and Ms. Shields in their individual capacities and also as trustees of the Shields Family Trust. Neonatal asserts two claims against the Shields Defendants: (1) it seeks a declaratory judgment that Neonatal has not infringed U.S. Patent No. 6,417,498 ("the '498 Patent"); and (2) it seeks a declaratory judgment that the Asserted Claims of the '498 Patent are invalid. Doc. 49 ¶¶ 36–41; Doc. 143 at 19.

The device disclosed in the '498 Patent is called the "Neonatal Substrate Warmer." The device automatically warms and vibrates baby bottles containing frozen or refrigerated breast milk so that the breast milk thaws, warms, and mixes quickly and efficiently. Defendants Janice M. Shields and Paul W. Shields invented the Neonatal Substrate Warmer and procured the '498 Patent. Defendant Angele Innovations, LLC currently owns the '498 Patent.

The Shields Defendants responded by filing an Answer and Counterclaim (Doc. 30), and later, they filed an Amended Answer and Counterclaim (Doc. 53). Their Counterclaim asserts eight claims, including one for patent infringement, against four Counterclaim defendants: Neonatal, Creche, Millennium Marketing Group, Ltd., and Scott Norman (collectively, "the Counterclaim Defendants").

Late in 2016, the Shields Defendants moved for leave to add a fifth Counterclaim defendant to the lawsuit. Doc. 138. The Shields Defendants explained that they had learned just recently that Neonatal had transferred the allegedly infringing product line to a third party—Ameda, Inc. ("Ameda"). The Shields Defendants contended that they first learned this information on December 5, 2016—more than three years into the litigation and only nine days before the Final Pretrial Conference. The court granted the Shields Defendants leave to amend (Doc. 153), and on June 5, 2017, the Shields Defendants filed their Second Amended Answer and Counterclaims, adding Ameda as a counterclaim defendant (Doc. 166).[1] The Shields Defendants assert just one claim against Ameda—a patent infringement claim. *Id.* ¶¶ 57–65.

---

[1] The Shields Defendants first filed a Second Amended Answer and Counterclaim (Doc. 154) that differed from the proposed version that they had asked the court for leave to file. The Counterclaim Defendants moved to strike the nonconforming pleading. The court granted the motion because the filed pleading made a substantive change to one of the Shields Defendants' previous admissions. Doc. 165 at 3. Because the court never had granted the Shields Defendants leave to file the version of the pleading that they had filed, the court struck the pleading and ordered the Shields Defendants to file the version that the court had granted them leave to file. *Id.* at 4. On June 5, 2017, the Shields Defendants filed their Second Amended Answer and Counterclaim that complied with the court's order.

Ameda has responded to this Counterclaim by filing a Motion to Dismiss under Fed. R. Civ. P. 12(b)(3).  Doc. 168.  It asserts that venue is not proper in this district.  For reasons explained below, the court grants Ameda's motion in part.

### I.     Rule 12(b)(3) Legal Standard

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a party to raise the defense of improper venue by motion.  Generally, the standards for deciding a motion to dismiss for improper venue follow those applied to a motion to dismiss for lack of personal jurisdiction.  *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1057–58 (D. Kan. 2006).  When a defendant challenges venue under Rule 12(b)(3), the plaintiff bears the burden of making a prima facie showing by submitting affidavits and other written material that venue is proper in the forum state.  *Id.*; *see also M.K.C. Equip. Co., Inc. v. M.A.I.L. Code, Inc.*, 843 F. Supp. 679, 682–83 (D. Kan. 1994).  When considering whether a plaintiff has met its venue burden sufficient to survive a motion to dismiss, the court takes as true the allegations in the Complaint—or, here, the Counterclaim—that are uncontroverted by defendant's affidavits and resolves all disputed facts in the light most favorable to the plaintiff.  *M.K.C. Equip.*, 843 F. Supp. at 682–83.

### II.    Analysis

Ameda asserts that venue is improper in this district based on the Supreme Court's recent decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017).  *TC Heartland* reaffirmed the Supreme Court's holding that 28 U.S.C. § 1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions."  137 S. Ct. at 1519 (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)).  Section 1400(b) provides that venue is proper in a patent infringement action "in the judicial district

3

where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). And, *TC Heartland* clarified that the statute's use of the term "resides" refers "only to the State of incorporation." 137 S. Ct. at 1521.

Ameda asserts that it is a Delaware corporation with it principal place of business in Illinois. Thus, under *TC Heartland*, Ameda does not "reside" in this judicial district. So, venue isn't proper under the first part of § 1400(b)'s alternatives.

Ameda also does not have a "regular and established place of business" in Kansas. The Shields Defendants respond, arguing that Ameda entered into a contract with Neonatal in Kansas and registered to do business in Kansas on September 15, 2016. But, as Ameda correctly explains, doing business in Kansas is not the same as maintaining a "regular and established place of business" under § 1400(b). *See Gould v. Cornelius Co.*, 258 F. Supp. 701, 704 (N.D. Okla. 1966) (explaining that "[t]he familiar test of 'doing business' is not to be substituted for the test of a 'regular and established place of business'" under § 1400(b) and holding that venue was improper when the defendant had a sales representative in the district but had no real estate, paid no rent, had no telephone number or telephone listing, and maintained no inventory or bank account in the district); *see also Thermolife Int'l, LLC v. F3 Nutrition, LLC*, No. CV 13-6883-RGK, 2013 WL 12149682, at *1–2 (C.D. Cal. Dec. 9, 2013) (explaining that establishing a "regular and established place of business" in the district requires a plaintiff to demonstrate that the defendant "is regularly engaged in carrying on a substantial part of its ordinary business" in the district and that it "operates that business on a permanent basis, in a physical location, within this District, over which it exercises some measure of control"); *IPCO Hosp. Supply Corp. (Whaledent Int'l Div.) v. Les Fils D'Auguste Maillefer S.A.*, 446 F. Supp. 206, 208 (S.D.N.Y.

1978) (concluding that § 1400(b)'s requirement that a defendant have a "'regular and established place of business' involves more than 'doing business'" and holding that the plaintiff had not established that venue was proper when the defendant did not own, lease, or control a place of business or physical location within the district).

The Shields Defendants have not established that Ameda has a "regular and established place of business" in Kansas to make venue proper under § 1400(b). Indeed, Ameda has no employees, offices, real property, bank accounts, phone listings, or post office addresses within this district.[2] Doc. 169-1 ¶¶ 5–10. Ameda's parent company is not organized under Kansas law, and it has no Kansas offices. *Id.* ¶ 11. Its sister companies and subsidiaries also are not organized under Kansas law and have no Kansas offices. *Id.* ¶¶ 12–13. Under these facts, Ameda has no "regular and established place of business" in Kansas sufficient to make venue proper under § 1400(b).

The Shields Defendants never dispute that Ameda's place of incorporation and principal place of business are outside Kansas. Instead, the Shields Defendants assert that venue is proper under Rule 14. Rule 14(a) provides that a defendant "may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The "primary purpose" of impleading third parties under Rule 14 is "to promote judicial efficiency" and "avoid the situation that arises when a defendant has been held liable to

---

[2] The Shields Defendants cite a repealed Kansas statute, arguing that a business is required to register to do business in Kansas only if it has branch offices, agents, or representatives in Kansas. Doc. 174 at 2 (citing Kan. Stat. Ann. § 17-7301). But, the current version of the statute, Kan. Stat. Ann. § 17-7931, contains no similar requirement. This current version of the statute also requires that the business provide "an irrevocable written consent . . . that actions may be commenced against it in the proper court of any county *where there is proper venue* . . . ." Kan. Stat. Ann. § 17-7931(g) (emphasis added). Thus, a business's consent to suit under this statute still requires proper venue to subject the business to suit in Kansas. Here, venue is not proper under § 1400(b)—the "sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland*, 137 S. Ct. at 1521 (citations and internal quotation marks omitted). These Kansas statutes provide no basis to make venue proper here.

plaintiff and then finds it necessary to bring a separate action against a third individual who may be liable to defendant for all or part of plaintiff's original claim."  6 Charles A. Wright, et al., *Federal Practice and Procedure* § 1442, Westlaw updated Apr. 2017; *see also Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir. 1983) ("The purpose of [R]ule 14 is to accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits." (citations and internal quotation marks omitted)).  But, "[i]t is well established . . . that impleader is proper only where the third-party defendant's liability is 'in some way derivative of the outcome of the main claim.'" *Id.* (quoting *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967) (further citations omitted)).

The Shields Defendants' Counterclaim against Ameda never asserts that Ameda is liable for any of Neonatal's declaratory judgment claims against the Shields Defendants.  Instead, the Counterclaim is just another claim for patent infringement against an additional defendant—Ameda.  So, the Shields Defendants did not bring Ameda into this lawsuit as a third-party defendant under Rule 14(a).  *See*, *e.g.*, *Hefley*, 713 F.2d at 1498 (explaining that a defendant could not implead parties when the defendant never asserted that the parties were liable to it if the plaintiffs succeeded on their claims and thus "the attempt to use [R]ule 14 impleader" in that case "require[d] [the court] to force a conceptual square peg into a procedural round hole," something the court was "unable to do"); *McNeilab, Inc. v. Scandiharm, Inc.*, No. 92-7403, 1993 WL 212424, at *3 (E.D. Pa. June 16, 1993) (holding that counterclaims for patent invalidity and non-infringement, if proven true, would constitute a total defense to the plaintiff's claims but "[a]s a defense, rather than a claim for contribution, indemnification or the like, [the

6

counterclaim did] not assert a basis for the liability of [the counterclaim defendant to the counterclaim plaintiff] under Rule 14").

The court recognizes that it might seem more efficient to litigate all of the parties' patent claims in this one proceeding. But, the court cannot disregard the venue requirements that Congress established in § 1400(b). *See*, *e.g.*, *Toombs v. Goss*, 768 F. Supp. 62, 65 (W.D.N.Y. 1991) (noting that "Congress has not created an exception to § 1400(b) in cases involving multiple defendants or conspiring defendants" and the court had "no authority to create such an exception to the statute"); *Max Daetwyler Corp. v. Input Graphics, Inc.*, 541 F. Supp. 115, 118 (E.D. Pa. 1982) (recognizing that it seemed "more efficient to try all the related patent infringement defendants in one action" but the court was "constrained by the Supreme Court's long-standing rule that section 1400(b) is the exclusive venue provision in patent infringement cases"); *H. Kohnstamm & Co., Inc. v. Allied Chem. Corp.*, No. 72 Civ. 301, 1974 WL 20206, at *4 (S.D.N.Y. Mar. 21, 1974) (after concluding that the district was not the proper venue for one of the patent infringement counterclaims asserted against one of three counterclaim defendants, the court explained that it was "most reluctant to render a decision which will result in a multiplicity of litigation involving similar or identical issues" but, still, "§ 1400(b) and the applicable case law unequivocally compel[ed] such a decision").

In sum, the court concludes that the District of Kansas is not a proper venue for the Shields Defendants' patent infringement claim against Ameda. Thus, the court must dismiss this part of the Counterclaim, or in the alternative, transfer it to the appropriate district. Ameda's Motion to Dismiss requests, as an alternative to dismissal, that the court transfer the case to the Northern District of Illinois, where Ameda maintains its principal place of business in Buffalo Grove. Doc. 168 at 2.

The court may transfer the Counterclaim only if it can sever it from this litigation under Rule 21.  *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F .2d 1509, 1518 (10th Cir. 1991) ("When transferring a portion of a pending action to another jurisdiction, district courts must first sever the action under Rule 21 before effectuating the transfer.").  Rule 21 gives "district courts discretion to sever any claim against a party and proceed with the claim or claims separately." *Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 623 (D. Kan. 2003).  A court may sever claims under Rule 21 "when it will serve the ends of justice and further the prompt and efficient disposition of litigation." *Id.*  "When determining whether severance is appropriate under Rule 21, the court considers the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic." *Id.* (quoting *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 350 (D. Kan. 1996)).

After considering these factors, the court concludes that the interests of justice justify severing the Shields Defendants' Counterclaim against Ameda and transferring it to the Northern District of Illinois.  Transfer of the Counterclaim promotes judicial expedition and economy by moving it from a district where venue is improper to one where venue is proper under § 1400(b).  Transfer also prevents prejudice.  The Shields Defendants already have filed their Counterclaim here.  Instead of dismissing the Counterclaim and requiring the Shields Defendants to refile it in another judicial district, a transfer will allow the parties to proceed with litigating the already-filed Counterclaim against Ameda in another district where venue is proper.  For all these reasons, the court declines to dismiss the Counterclaim against Ameda and, instead, severs that claim and transfers it to the United States District Court for the Northern District of Illinois.

### III.    Conclusion

The court concludes that the District of Kansas is not a proper venue for the Shields Defendants' Counterclaim for patent infringement against Ameda. Instead of dismissing the Counterclaim for improper venue, however, the court severs and transfers that Counterclaim to the Northern District of Illinois, as Ameda has requested.

**IT IS THEREFORE ORDERED BY THE COURT THAT** counterclaim defendant Ameda, Inc.'s Motion to Dismiss for Improper Venue (Doc. 168) is granted in part. The court severs and transfers the Counterclaim against Ameda, Inc. (Count I of the Counterclaim (Doc. 166 ¶¶ 57–65)) to the Northern District of Illinois. The court directs the Clerk of this court to take all action necessary and appropriate to: (a) notify the Clerk of the Northern District of Illinois of this Order; and (b) effect the transfer of the Counterclaim against Ameda, Inc. to that district.

**IT IS SO ORDERED.**

**Dated this 20th day of July, 2017, at Topeka, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**